**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

VICTORIA SPAUGY,                           :

                             Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                            Defendant.         :

Case No. 3:10-cv-106

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A).  Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

3

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on June 20, 2002, alleging disability from October 2, 2001, which were denied initially and on reconsideration. (Tr. 65-57; 43-52). Administrative Law Judge Melvin Padilla held a hearing and in a decision dated June 25, 2004, determined that Plaintiff was not disabled. (Tr. 363-77). Plaintiff took no further appeal.

Plaintiff again filed applications for SSD and SSI on January 20, 2005, alleging disability from June 26, 2004, due to COPD, bipolar, mood disorder, migraines and high blood pressure. (Tr. 397-401; 793-95; 408). The Commissioner denied Plaintiff's applications initially and on reconsideration. (Tr. 378-82; 384-86; 797-800; 802-05). Administrative Law Judge Thomas McNichols held a hearing, (Tr. 811-51), and subsequently determined that Plaintiff is not disabled. (Tr. 24-35). The Appeals Council denied Plaintiff's request for review, (Tr. 9-11), and Judge McNichols' decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge McNichols found that Plaintiff has severe emphysema/chronic obstructive pulmonary disease, anxiety/depression and a history of polysubstance abuse in reported remission interrupted by relapse in July, 2007, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 28, ¶¶ 3, 4). Judge McNichols also found that Plaintiff has the residual functional capacity to perform a limited range of light work. *Id.* at ¶ 5. Judge McNichols then used section 202.18 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and found that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 34, ¶ 10). Judge McNichols determined that Plaintiff is not disabled and therefore not entitled to benefits under

the Act.  (Tr. 35).

Plaintiff has a history of a pulmonary impairment dating back to at least 1999 and which has, over the years, required hospital treatment both as an inpatient and in the emergency room.  *See,* Tr. 151-74; 175-96; 304-05; 237, 302-03; 198-214; 215-36; 576-77; 248-61; 283-84; 578-83; 348-62; 768-76.

Dr. Anigboju has been Plaintiff's treating pulmonologist since May, 2002.  *See,* Tr. 248-61.  In June, 2002, Dr. Anigboju reported that Plaintiff's diagnosis was chronic obstructive pulmonary disease,  her condition was poor but stable, she was able to stand/walk for less than two hours in an eight-hour day and for less than one hour without interruption, lift/carry up to ten pounds frequently, and that her ability to sit was not affected by her impairment.  (Tr. 263-64).  Dr. Anigboju opined that Plaintiff was unemployable.  *Id.* Dr. Anigboju also reported in June, 2002, that Plaintiff's FEV1 was 1.70 or 61% of predicted, her total lung capacity was 130% of predicted, and her diffusion capacity when corrected for alveolar volume was 36% of predicted showing moderate obstruction and hyperinflation and severe diffusion defect consistent with emphysema.  (Tr. 279).  Dr. Anigboju reported on September 27, 2002, that Plaintiff had quit smoking about two weeks ago, continued to have a cough but was significantly improved, and that her lung sounds were clear.  (Tr. 278).  On March 29, 2003, Dr. Anigboju reported that Plaintiff still smoked occasionally but had significantly reduced to less than a pack per day, she continued to have a cough, her lung sounds were clear, and that her COPD was stable.  (Tr. 585).

Plaintiff began receiving treatment from Dr. Frank on May 17, 2002, who noted Plaintiff's history of COPD and that she had expiratory rhonchi and basal coarse crepitation worse on forced expiration.  (Tr. 575).  Dr. Frank identified Plaintiff's diagnoses as emphysema, asthmatic

5

bronchitis, and insomnia and she prescribed medications and advised Plaintiff to seek a job with benefits. *Id*. Dr. Frank reported in August, 2003, that Plaintiff's diagnosis was COPD, she complained of dyspnea at rest, and that she was able to stand/walk for less than two hours in an eight-hour day and for less than one hour without interruption. (Tr. 557-58). Dr. Frank also reported that Plaintiff's impairment did not affect her ability to sit, that she was able to lift/carry up to ten pounds occasionally, and that she was unemployable. *Id.* On December 2, 2003, Dr. Frank reported that she had been treating Plaintiff since July 11, 2003, her diagnoses were asthma/COPD, dyspnea, depression, and possible bipolar disorder, that her dyspnea caused fatigue, that she was able to perform office and computer work, and that she should be able to be trained for nonexertional work in a clean-air environment. (Tr. 549-51).

Examining physician Dr. Danopulos reported on December 18, 2003, that Plaintiff had a long history of smoking and had stopped five months ago, her lungs were clear to auscultation and percussion tone was normal, her expiration was prolonged, and that she did not use accessory muscles during respiration. (Tr. 327-43). Dr. Danopulos also reported that Plaintiff's ventilatory function study revealed a mild degree of obstructive lung disease without a restrictive component, and that the objective findings were early emphysema, well-controlled hypertension, headaches controlled well with beta blockers, and circumstantial depression. *Id.* Dr. Danopulos opined that Plaintiff's ability to perform any work-related activities was affected to a certain degree from her early emphysema which affected her ability to walk long distances. *Id.* On January 20, 2004, Dr. Danopulos reported that Plaintiff was able to lift/carry up to ten pounds occasionally and less than ten pounds frequently, stand/walk for at least two hours in an eight-hour day, and that her ability to sit was not affected by her impairments. *Id.*

Dr. Frank reported on March 31, 2004, that Plaintiff had stopped smoking in December, 2003, but that she was still unable to work, that her diagnoses were COPD and asthma, and that she was compliant with her medications. (Tr. 362).

Dr. Frank reported on July 20, 2004, that she had been treating Plaintiff for one year, her diagnoses were asthma and COPD which had been diagnosed six years ago, that it was difficult for her to work in a non-air-conditioned environment or with increased dust or chemical levels, she could not tolerate to be around perfumes or smoke, and that she had difficulty with routine daily living activities. (Tr. 537-39). Dr. Frank also reported that Plaintiff could not function in a work environment and that she was always coughing. *Id.* In September, 2004, Dr. Frank reported that Plaintiff's condition was improving with treatment, her diagnoses were COPD, asthma, environmental allergies, bipolar/depression, hypertension, and migraine headaches, and that she was not able to walk without getting short of breath. (Tr. 530-32). Dr. Frank also reported that Plaintiff's impairments did not affect her ability to sit, she was able to lift up to five pounds frequently and up to ten pounds occasionally, and that she was unemployable. *Id.*

Plaintiff underwent a pulmonary function study in May, 2007, which revealed a pre-bronchodilator FVC of 1.71, 51% of predicted, and a post-bronchodilator FVC of 2.14, a pre-bronchodilator FEV1 of .79, 28% of predicted, and a post-bronchodilator FEV1 of 1.39, a lung volume of 163% of predicted, and which indicated a severe obstructive defect with significant post-bronchodilator response. (Tr. 710).

In addition to evidence which addresses Plaintiff's alleged exertional impairments, the transcript contains evidence with respect to alleged mental impairments.

Examining psychologist Dr. Boerger noted on April 6, 2005, that Plaintiff reported

7

she went to the ninth or tenth grade and that she had "lots of trouble with anxiety." (Tr. 465-71). Dr. Boerger also noted that Plaintiff related in a cooperative manner, had normal speech and an appropriate affect, was alert and oriented, and that testing revealed that her performance IQ was 75, her verbal IQ was 82, and her full scale IQ was 77, placing her in the borderline to low average range of intelligence. *Id.* Dr. Boerger reported that Plaintiff read at the fifth grade level, her memory fell in the borderline to low average range, and that her diagnoses were generalized anxiety disorder, depressive disorder NOS, cognitive disorder NOS, and reading disorder, and her GAF was 52. *Id.* Dr. Boerger opined that Plaintiff's ability to relate to others was moderately impaired, her ability to understand and follow instructions was mildly to moderately impaired, her ability to maintain attention to perform simple repetitive tasks was mildly impaired, and her ability to withstand the stress and pressures associated with day-to-day work activity was moderately impaired. *Id.*

Plaintiff began receiving mental health treatment at Shelby County Counseling in March, 2007, and continued to receive counseling at that facility until at least February 4, 2008. (Tr. 697-709; 757-67). At the time a counselor initially evaluated Plaintiff, the counselor reported that Plaintiff had past issues with alcohol and marijuana, was depressed due to health, financial, and family issues, and that her diagnosis was depressive disorder NOS and her GAF was 62. *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting her treating physician's opinion and by ignoring other opinions from her treating physician. (Doc. 6).

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406

(6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

any specialization of the treating physician." *Blakley,*582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Dr. Frank's opinion that Plaintiff is unemployable, Judge McNichols essentially determined that it is not supported by objective evidence and is inconsistent with other evidence of record. (Tr. 30).

Although Dr. Frank opined in August 2003 and September 2004 that Plaintiff is unemployable, her opinions are supported by few, if any, objective findings. For example, in August, 2003, Dr. Frank simply relied on Plaintiff's subjective complaint of "dyspnea at rest" to support her conclusion that Plaintiff is unemployable. (Tr. 557-58). In September, 2004, Dr. Frank failed to identify any objective clinical findings to support her opinion. (Tr. 530-31).

In contrast, examining physician Dr. Danopulos reported that Plaintiff's ventilatory function revealed, at worst, a mild degree of obstructive lung disease without a restrictive component. More importantly, however, a May 2007 pulmonary function study revealed that, although Plaintiff had a severe obstructive defect, she had a significant bronchodilator response. Further, Dr. Frank's opinions are inconsistent with the reviewing physicians' opinions. *See,* Tr. 484-91.

Plaintiff takes issue with each of Judge McNichols' reasons for rejecting Dr. Frank's opinion. For example, Plaintiff's argues that Judge McNichols' characterization of Dr. Frank's opinion as describing Plaintiff as "partially bedfast" is inconsistent with Dr. Frank's conclusion that Plaintiff's ability to sit is not affected by her impairments. However, it appears that when he characterized Dr. Frank's opinion in that manner, Judge McNichols was simply indicating that Dr. Frank determined that Plaintiff was extremely impaired, a finding that, as noted above, is not supported by the evidence. *See,* Tr. 30.

Plaintiff also argues that Judge McNichols erred by determining that her COPD has

been aggravated by her smoking behaviors. Plaintiff's position is that there is not evidence to support that conclusion. However, contrary to Plaintiff's argument, and as noted above, over time, Plaintiff has provided medical care providers with different dates as to when she quit smoking. For example, In September, 2002, Plaintiff reported that she had quit smoking; in March, 2003, she reported that she continued to smoke occasionally; in December, 2003, she reported that she had quit smoking five months ago (July, 2003); and in March, 2004, she reported that she had stopped smoking in December, 2003.

Plaintiff argues further that Judge McNichols erred by failing to give the proper weight to Dr. Frank's opinion that she should not be exposed to increased dust levels, chemicals, perfumes, colognes, aftershaves, or smoke. However, Judge McNichols determined that Plaintiff was limited to working in a clear-air, temperature-controlled environment, with no exposure to irritants. (Tr. 28). Those limitations are consistent with the environmental restrictions which Dr. Frank and the reviewing physicians identified.

Under these facts, the Commissioner did not err by rejecting Dr. Frank's opinion or by ignoring certain limitations which Dr. Frank described.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision

12

in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

December 22, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).